IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-247-BO

| | |
|---|---|
| KERNAN T. MANION, M.D., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| SPECTRUM HEALTHCARE ) | |
| RESOURCES and NITELINES KUHANA ) | |
| JV, LLC, ) | |
| Defendants. | |

This cause comes before the Court on defendants' motions to dismiss and for judgment on the pleadings. A hearing was held before the undersigned on the motion to dismiss on May 2, 2013. Both motions now having become ripe for review, the Court denies the pending motions.

## BACKGROUND

The facts as alleged in plaintiff's complaint are as follows. Plaintiff is a psychiatrist who retired from private practice and took a job as a healthcare contractor at the Deployment Health Center (DHC) at the Naval Hospital Camp LeJeune. Defendants are healthcare contractors that provide medical staffing and management services to federal government and military facilities. Spectrum Healthcare Resources (Spectrum) recruited and offered plaintiff a contract for employment in a psychiatrist position at the DHC, and upon plaintiff's acceptance and just prior to its finalization, his contract was assigned to Nitelines Kuhaha JV, LLC (Nitelines) to monitor plaintiff's employment.

Plaintiff began working at the DHC in January 2009 and provided psychiatric treatment to severely injured sailors and marines who had recently returned from combat duty deployments.

Plaintiff complained often to the DHC director, Navy officials, and defendants about the lack of fundamental protocol for managing psychotic, suicidal, and homicidal patients, as well as chronic under-staffing and the use of non-physician decision-makers regarding fitness for redeployment.

In June 2009, after plaintiff had sent multiple reports to the commanding officer of the Naval Hospital, Nitelines informed plaintiff that he must cease communicating with the government and suggested that he transfer to a less acute facility. Plaintiff agreed, but was dissatisfied by the abrupt method by which he was transferred and his care to critical patients was terminated. Plaintiff notified defendants that he intended to disclose his concerns to Congress and several inspectors general, and plaintiff in fact filed his complaints with the Inspectors General of the Navy, Marine Corps, and the Department of Defense on August 30, 2009. Nitelines issued a notice of premature contract termination to plaintiff on September 1, 2009, providing for termination in ninety days; on September 3, 2009, such termination was voided and plaintiff's contract was terminated effective immediately.

Plaintiff then filed suit in this Court against Spectrum and Nitelines alleging claims for illegal reprisal for protected disclosures under the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 2409, for unlawful discharge in violation of public policy, breach of contract, and intentional interference with contract. Both defendants contend that plaintiff's complaint should be dismissed for failure to join a necessary party, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(1), (6), and (7).

## DISCUSSION

### I. The Court maintains subject matter jurisdiction over plaintiff's claims

The Court satisfies itself first of its subject matter jurisdiction over plaintiff's Defense

2

Contractor Whistleblower Protection Act claim. Both defendants contend that plaintiff does not have standing to bring an action under 10 U.S.C. § 2409 because he was not an employee of a civilian defense contractor, but rather was an independent contractor of Nitelines under a personal services contract with the Navy. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The Defense Contractor Whistleblower Protection Act (DCWPA or § 2409) provides that

> An employee of a contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a Member of Congress, a representative of a committee of Congress, an Inspector General, the Government Accountability Office, a Department of Defense employee responsible for contract oversight or management, or an authorized official of an agency or the Department of Justice information that the employee reasonably believes is evidence of gross mismanagement of a Department of Defense contract or grant, a gross waste of Department of Defense funds, a substantial and specific danger to public health or safety, or a violation of law related to a Department of Defense contract (including the competition for or negotiation of a contract) or grant.

10 U.S.C. § 2409(a). Defendants do not contest that they would otherwise be considered contractors for purposes of the DCWPA; the issue for the Court to decide here is whether plaintiff was an employee of defendants and thus would be entitled to whistleblower protection under the Act. The DCWPA does not define the term employee.

An inquiry as to the meaning of the terms of an act generally begins and ends with the

3

plain language of the statute. *Vessell v. DPS Assocs. of Charleston, Inc.*, 148 F.3d 407, 412 (4th Cir. 1998). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). The term "employee" has been interpreted differently when applied in different contexts, *see Id.* at 342-45, and the DCWPA provides no guidance, such as a definition of the term or use of the term in a different context, that would provide further insight as to its meaning. Nor does the broader context of the statute as a whole provide guidance, as the DCWPA is a stand-alone statute not situated within a larger statutory scheme. In light of the foregoing, the Court finds that the term employee as used in § 2409 is ambiguous, and thus that it must resolve such ambiguity. *Robinson*, 519 U.S. at 345. In doing so, and in light of the paucity of both the legislative history and case law interpreting the DCWPA, the Court is persuaded by Congress' clear intent in a similar context.

The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, also contains an anti-retaliation or whistleblower protection provision that covers "employees," a term not initially defined by the FCA. When faced with deciding whether the term employee in that context would extend to independent contractors, this circuit and others decided that it would not. *Vessell*, 148 F.3d at 413; *see also United States ex rel. Watson v. Connecticut. Gen. Life Ins.*, 87 Fed. App'x 257 (3rd Cir. 2004). Mindful of such decisions, Congress in 2009 amended the anti-retaliation provision of the FCA to include the terms government contractor and agent. Pub. L. 111-121, § 4(d); 31 U.S.C. § 3730(h)(1). The legislative history of this amendment clearly reveals Congress' intent to undo the courts' narrow interpretation of the term employee in the context of a law designed to protect workers who encounter and report government fraud. S. REP. NO. 110-507 at 26-27

4

(specification that independent contractors are protected under the FCA is a "vitally important clarification that respects the spirit and intent of the [FCA]").

Informed by Congress' expressed intent in a similarly remedial statute designed to protect the government from fraud, the Court holds that in the context of the DCWPA it is appropriate to define the term employee in its broadest and most generic sense – that is, as individuals who are delegated to work irrespective of whether they would be considered employees in other contexts. This construction serves the DCWPA's intended purpose of preventing fraud and protecting government workers who report fraud on the government; a more narrow interpretation of the term employee in this context would only serve to "invite manipulation by [defense contractors], which could avoid . . . liability simply by attaching different labels to particular jobs." *O'Hare Truck Svs., Inc. v. City of Northlake*, 518 U.S. 712, 722 (1996).

In light of the foregoing, plaintiff as an independent contractor of a defense contractor has standing to bring an action under 10 U.S.C. § 2409 against defendants. The Court further holds that plaintiff exhausted his administrative remedies as provided by the DCWPA when he filed a complaint with the Inspector General of the Department of Defense and was later denied relief by the head of an executive agency.[1] *See* 10 U.S.C. § 2409(c)(2); [DE 35-3 & 35-4]. Because the Court has determined that it has subject matter jurisdiction over plaintiff's § 2409 claim, it exercises supplemental jurisdiction over plaintiff's remaining state law claims. 28 U.S.C. § 1367(a).

---

[1] Nitelines' 12(b)(6) argument relates only to its contention that plaintiff has failed to exhaust his administrative remedies, contending that plaintiff's complaint does not allege with sufficient specificity that he has exhausted his administrative remedies. As Nitelines has not argued that plaintiff's complaint generally fails to state a plausible claim for relief, the Court does not address such an argument here.

5

## II. Plaintiff did not fail to join a necessary party

Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes dismissal of an action for failure to join a necessary party. Rule 19(a) requires that persons be joined if feasible if in the person's absence the court cannot accord complete relief among the existing parties. Fed. R. Civ. P. 19(a)(1)(A). If a required party cannot be joined, a court must determine whether in equity and good conscience the matter should be dismissed. Fed. R. Civ. P. 19(b).

As plaintiff has correctly noted, the Court's finding that as an independent contractor plaintiff has standing to bring suit under § 2409 nullifies defendants' arguments that the Navy is a necessary party who plaintiff was required to join. The DCWPA provides that a complainant may bring an "action at law or equity against *the contractor*." 10 U.S.C. § 2409(c)(2) (emphasis added). The Navy is not a permitted defendant under the DCWPA and is therefore not a necessary party under Rule 19.

## III. Judgment on the pleadings in favor of Spectrum is not appropriate at this time

Though the majority of Spectrum's arguments in its motion for judgment on the pleadings mirror those of Nitelines, Spectrum further contends that it is entitled to judgment in its favor because plaintiff has not demonstrated that he had an employment contract or any contractual agreement with Spectrum and because Spectrum was not a government contractor in relation to plaintiff. The Court considers Spectrum's Rule 12(c) motion using the Rule 12(b)(6) standard. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff has alleged that both Nitelines and Spectrum were involved in and responsible

6

for plaintiff's hiring and that plaintiff complained of alleged mismanagement and dangers to public health and safety to both defendants. Plaintiff has further alleged that Nitelines is an alter ego of Spectrum and that the entities had a unity of interest and ownership. Taking the allegations of the complaint as true, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), the Court finds that plaintiff has sufficiently alleged that Spectrum could be liable for misconduct and that judgment on the pleadings in Spectrum's favor is therefore inappropriate at this time. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, Spectrum in its reply brief argues that Congress' recent amendment to the DCWPA requires dismissal of plaintiff's DCWPA claim as plaintiff's termination was the result of a nondiscretionary directive, a form of reprisal to be excluded from protection under § 2409 beginning in July 2013. To show that plaintiff's termination resulted from a nondiscretionary directive, Spectrum relies on an email sent to Nitelines directing that plaintiff be removed from any schedules at Camp Lejeune [DE 23-2].

First, plaintiff's claim clearly arose and falls under § 2409 prior to its amendment in July 2013. Second, whether the proffered evidence actually constitutes a nondiscretionary directive as contemplated by the DCWPA is a question the Court need not decide today; plaintiff has sufficiently alleged that he suffered reprisal after making disclosures of what he reasonably believed to be evidence of gross mismanagement of a defense contract as well as evidence of a substantial and specific danger to public health or safety related to a defense contract. Thus his claim survives the motion for judgment on the pleadings.

## CONCLUSION

Accordingly, for the reasons discussed above, defendant Nitelines' motion to dismiss [DE

7

22] and defendant Spectrum's motion for judgment on the pleadings [DE 38] are DENIED.

SO ORDERED, this 6 day of August, 2013.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE