UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No: 7:12-CV-247-BO

KERNAN T. MANION, M.D., )
              Plaintiff, )
                         )
v.                              )         ORDER
                         )
NITELINES KUHANA JV LLC, )
            Defendant. )

This cause comes before the Court on defendant Nitelines' motion for summary judgment. Plaintiff has responded, defendant has replied, and the matter is ripe for ruling. For the reasons discussed below, defendant's motion is granted.

## BACKGROUND

Plaintiff is a psychiatrist who formerly provided care to men and women at the Deployment Health Center at the Naval Hospital Camp Lejeune. Plaintiff was terminated from his position after he complained of certain practices at the Deployment Health Center (DHC). Plaintiff filed this action under, *inter alia*, the Defense Contractor Whistleblower Protection Act (DCWPA), 10 U.S.C. § 2409, alleging illegal reprisal for protected disclosures. By order entered August 6, 2013, the Court denied defendants' motions to dismiss and for judgment on the pleadings.[1] In so doing, the Court determined that plaintiff, as an independent contractor of defense contractors, has standing to bring an action under 10 U.S.C. § 2409.

The matter has since proceeded through discovery and defendant Nitelines has moved for summary judgment on all of plaintiff's claims. The relevant factual background which does not

---

[1] Another contractor-defendant through whom plaintiff was employed, Spectrum Healthcare Resources, has been since been dismissed from this action. [DE 79].

appear to be in dispute is as follows. Nitelines entered into a contract with Naval Medical Logistics Command on September 7, 2007, to furnish qualified healthcare workers as requested. Def's Ex. 6. On September 3, 2008, Nitelines and plaintiff entered into an independent contractor agreement wherein plaintiff would provide psychiatric services at DHC, Naval Hospital Camp Lejeune to sailors and marines who had recently returned from combat duty deployments. Def's Ex. 1; Manion Aff. ¶¶ 6-8. Shortly after beginning work, plaintiff encountered procedures and scenarios that he considered to be unsatisfactory or cause for concern. Plaintiff witnessed two incidents involving patients or alleged patients exhibiting violent and potentially self-or-otherwise injurious behavior, in addition to noting a lack of personnel support, lack of regular clinician meetings, and a lack of appropriately trained support staff. Manion Aff. at ¶¶ 16-34. Plaintiff voiced his concerns to his direct supervisor, Captain Arnold, as well as to Captain Arnold's supervisors. *See e.g.* Pl's Ex. 4;5.

In June 2009, plaintiff notified the Commanding Officer of the Naval Hospital of his concerns and his intent to raise his concerns with the Inspector General if necessary; plaintiff sent a copy of this communication to Nitelines. Pl's Ex. 7; 1 ¶ 57; 9. The following day, Nitelines emailed plaintiff and notified him that "it is requested that you Cease and Desist all further correspondence with the Government!" Pl's Ex. 10. In July 2009, plaintiff agreed to be transferred from the DHC to the Mental Health Clinic (MHC), where the context of his work would be the same or similar but he would be working in a different setting under different supervisors. Manion Aff. ¶¶ 69-71; Def's Ex. 8 at 167-168. Also in July 2009, plaintiff's supervisor Captain Arnold authored a memorandum detailing plaintiff's "sustained pattern of noncompliance with numerous and specific contract stipulations, and/or, specific supervisory guidance," including non-compliance with chain of command protocols, non-compliance with

2

payroll/timecard submission deadlines, and non-compliance with contract stipulations regarding proper respect and professionalism in the workplace. Def's Ex. 9.

After having agreed to transfer to the MHC, plaintiff expressed his intention and concern that he be permitted to continue to treat at least some of his patients from the DHC. Following a meeting with his supervisors on August 28, 2009, wherein it was first stated that plaintiff's patients would not be transferred with him, plaintiff announced his intent to resign. Manion Aff. ¶¶ 88-94; Def's Ex. 10. On August 30, 2009, plaintiff filed a complaint with the Inspector General of the Navy, BUMED, the Marine Corps, and the DOD concerning patient safety and violence response protocol. Pl's Ex. 19. In that letter plaintiff stated that he had announced to his intent to resign "given such grossly unethical circumstances as well as abusive treatment and retaliatory firing". *Id.*

On September 1, 2009, Nitelines met with plaintiff and advised him that his independent contract was terminated without cause and with ninety days' notice pursuant to paragraph 9(b) of the contract. Def's Ex. 8; Pl's Ex. 20. Also on September 1, 2009, plaintiff was notified that the Inspector General would be sending a senior medical officer to investigate his concerns; the officer arrived on September 2, 2009. Manion Aff. ¶ 112. On September 3, 2009, the Navy contracting officer notified Nitelines that plaintiff did not meet government requirements and Nitelines was directed to remove plaintiff from any schedules under his contract. Def's Ex. 12. On September 3, 2009, Nitelines notified plaintiff that his services and any agreements at Camp Lejeune would terminate at the end of September 3, 2009, pursuant to the request of the Navy that he no longer provide services and plaintiff's independent contractor agreement at paragraph 9(d)(iii). Def's Ex. 13.

3

On May 9, 2011, the Inspector General of the Department of Defense issued a report based on plaintiff's allegations as well as a request by Representative Walter B. Jones that plaintiff's allegations be investigated. Def's Ex. 14. The report states that the Inspector General was unable to substantiate the allegations, that plaintiff was terminated from his position independent of any concerns or complaints he made to his chain of command or the Inspector General, and that there was no threat to the lives of patients due to the termination of plaintiff nor was treatment to patients abruptly terminated upon plaintiff's departure. *Id.*

DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 252 (1986). "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of his case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citing *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir.1999) (per curiam)).

I.   PRIVATE RIGHT OF ACTION

Nitelines first contends that the applicable version of the DCWPA provides no private right of action and plaintiff's DCWPA must therefore be dismissed. Prior to 2008, the DCWPA did not provide for a private right of action. *See Pancheo v. Raytheon Co.*, 777 F. Supp. 1089, 1092 (D.R.I. 1991); *Mayo v. Questech, Inc.*, 727 F. Supp. 1007, 1014 (E.D.Va. 1989). Nitelines entered into its contract with Naval Medical Logistics Command on September 7, 2007, prior to the passage of the 2008 amendments to the DCWPA which expressly provide for a private right of action. The Inspector General in this matter also found that the pre-2008 version of the DCWPA applied, but noted that it would consider plaintiff's claims under the increased protections provided after the 2008 amendments irrespective of such finding. Def's Ex. 14 at 4 n.7.

Plaintiff argues that Nitelines' argument is frivolous as *plaintiff's* contract with Nitelines was clearly executed after the 2008 amendments went into effect. The statute is silent, however, as to *whose* contract is relevant for purposes of determining which version of the statute to apply. The only case of which the Court is aware to have addressed this issue, though not directly, relied on the date that the *contractor* entered into its contract with the Department of Defense, not the date of the employment contract of the employee seeking protection under the DCWPA. *Micalizzi v. Rumsfeld*, 247 F. Supp. 2d 556, 559 (D. Vt. 2003).

Under this view, plaintiff's claim would fall under the pre-2008 version of the DCWPA and plaintiff would be without a private right of action to assert his claim in this Court. However, as the Inspector General went on to consider plaintiff's claim under the post-2008 amendments, the Court will also assume without deciding that plaintiff has standing to bring his DCWPA claim and will address defendant's motion regarding the merits of plaintiff's claim.

5

II.  DEFENDANT'S TERMINATION OF PLAINTIFF'S CONTRACT WAS NOT CONTRARY TO LAW OR IN VIOLATION OF PUBLIC POLICY

The Defense Contractor Whistleblower Protection Act (DCWPA) provides that:

> An employee of a contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a Member of Congress, a representative of a committee of Congress, an Inspector General, the Government Accountability Office, a Department of Defense employee responsible for contract oversight or management, or an authorized official of an agency or the Department of Justice information that the employee reasonably believes is evidence of gross mismanagement of a Department of Defense contract or grant, a gross waste of Department of Defense funds, a substantial and specific danger to public health or safety, or a violation of law related to a Department of Defense contract (including the competition for or negotiation of a contract) or grant.

10 U.S.C. § 2409 (2008).

Nitelines' decision to terminate plaintiff based on the Navy's direction that plaintiff be removed from any schedules under his contract was in accordance with the terms of plaintiff's independent contractor agreement, and there is no genuine issue of material fact as to whether Niteline's motivation for its election to terminate plaintiff was in reprisal for plaintiff's engagement in protected activities under the DCWPA.

Section 9(d)(iii) of plaintiff's independent contractor agreement with Nitelines provides that Nitelines may terminate plaintiff's employment effective immediately in the event that Nitelines receives a request that plaintiff not provide services under the contract or any withdrawal, limitation, or restriction of plaintiff's privileges, access, or approval to provide services. Def's Ex. 1 at 7. As noted above, the Navy directed Nitelines by email dated September 3, 2009, to "remove [plaintiff] from any schedules under this contract and to request Contracting Officer prior approval prior to submitting him for scheduling under any other Navy Hospital – Camp Lejeune contract or task order." Def's Ex. 12. Thus, when Nitelines notified plaintiff that it was

6

terminating his contract effective immediately, such action was in accordance with § 9(d)(iii) of plaintiff's independent contractor agreement with Nitelines.

There can be no doubt based on the evidence presented and forecast in this case that plaintiff had serious personal conflicts with his direct supervisor at the DHC and that plaintiff made numerous complaints regarding the conditions of and protocols applicable to his employment and the DHC generally. Those complaints relating to the safety and well-being of troops returning home from deployment raised serious concerns which, if well-founded, should have been addressed by the Navy and the Department of Defense with the utmost gravity. However, that the Navy concluded that plaintiff was no longer suitable for employment and directed its staffing contractor to remove plaintiff from any further duties under his independent contractor agreement does not appear, in light of the plain language of the statute and the paucity of case law interpreting it, to raise a claim under the DCWPA. Had plaintiff raised concerns to his Congressman or the Department of Defense about the activities of *Nitelines*, and Nitelines had then terminated him from his position in reprisal for plaintiff's complaints, such action would clearly be actionable under the statute.[2] Where, however, as here, it was the Navy's decision to terminate plaintiff, and Nitelines was merely effecting such decision as contemplated by plaintiff's independent contractor agreement, the Court is constrained to find that Nitelines is entitled to judgment as a matter of law on plaintiff's DCWPA claim.

Nitelines is further entitled to summary judgment in its favor on plaintiff's claim that he was unlawfully discharged in violation of public policy, specifically the public policy of North

---

[2] Plaintiff has presented evidence that Spectrum, another staffing contractor that had authority over plaintiff's contract to provide services to the Navy, was allegedly under pressure to terminate or otherwise "handle" plaintiff in light of his numerous complaints or else face non-renewal of its contract with the Navy. Spectrum has been dismissed from this suit however, and plaintiff has presented no evidence to suggest that Nitelines was under any similar pressure.

7

Carolina as expressed through medical ethics and standards of care. N.C. Gen. Stat. §§ 90-5.1; 126-84(a)(4).[3] The specific actions about which plaintiff complains in his complaint are those taken by the Navy, specifically by Commander O'Byrne, regarding plaintiff's complaints and concerns about patient and public safety, and not any action taken by Nitelines. As discussed above, Nitelines decision to terminate plaintiff's employment was based on a directive from the Navy as contemplated by plaintiff's independent contractor agreement. Plaintiff has not come forward with any evidence upon which a factfinder could find that Nitelines acted in any way that violated the North Carolina's medical ethics guidelines and standards of care, and Nitelines is entitled to judgment in its favor on this claim.

III. DEFENDANT'S ACTIONS DID NOT BREACH PLAINTIFF'S CONTRACT

Plaintiff's breach of contract claim is based on the allegedly retaliatory actions of Nitelines in providing plaintiff first with ninety-day notice of termination and second with notice of immediate termination. [DE 1 ¶¶ 124 – 125]. As discussed above, there is no genuine issue of material fact regarding whether Nitelines acted in retaliation for protected disclosures when it terminated plaintiff's independent contractor agreement effective immediately based upon a directive from the Navy. Nor is there a genuine issue of material fact regarding whether Nitelines' decision to provide plaintiff with ninety-day notice of termination was retaliatory. On August 28, 2008, plaintiff announced his intent to resign. Plaintiff engaged in disclosures protected by the DCWPA on August 30, 2009,[4] when he filed a complaint with the Inspector General of the Navy, BUMED, the Marine Corps, and the DOD concerning patient safety and

---

[3] The Court notes that N.C. Gen. Stat. § 126-84, though cited in plaintiff's complaint, concerns only employees of the State of North Carolina.

[4] While plaintiff lodged numerous complaints during his employment, his disclosure on 28 August 2009 to the IG and DOD was the first revealed in the record to satisfy the protected disclosure provisions under the DCWPA.

8

violence response protocol. In that letter plaintiff also stated that he had announced to his intent to resign. On September 1, 2009, Nitelines met with plaintiff and advised him that his independent contract was terminated without cause, with ninety days' notice pursuant to paragraph 9(b) of the contract.

Plaintiff has stated that Nitelines was unaware of his protected disclosure to the IG when it informed plaintiff that it was exercising its option to provide plaintiff with ninety-days' notice. Def's Ex. 8 at 165. In light of both plaintiff's stated intent to resign and Nitelines' lack of knowledge of plaintiff having engaged in protected disclosures, Nitelines' action under its contract to terminate plaintiff without cause cannot constitute illegal reprisal, nor a breach of plaintiff independent contractor agreement.

As plaintiff has failed to come forward with sufficient evidence to demonstrate that genuine issues of material fact exist as to his claims against Nitelines,[5] and Nitelines has demonstrated that it is entitled to judgment as a matter of law, summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate.

## CONCLUSION

For the foregoing reasons, Nitelines Kuhana JV's motion for summary judgment [DE 71] is GRANTED. The clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this __6__ day of May, 2014.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff's remaining claim in his complaint for intentional interference with contract was alleged only against Spectrum.

9